IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Case No. 09-cv-02391-REB-CBS

JOSEPH GONZALES,

    Plaintiff,

v.

COMCAST OF COLORADO IX, LLC, a Delaware limited liability company,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before me is **Defendant's Motion for Summary Judgment** [#26][1] filed July 23, 2010. I grant the motion.[2]

## I. JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question).

## II. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. **FED.R.CIV.P.** 56(c);

---

[1] "[#26]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

[2] The issues raised by and inherent to the motion for summary judgment are fully briefed, obviating the necessity for evidentiary hearing or oral argument. Thus, the motion stands submitted on the papers. *Cf.* **FED. R. CIV. P. 56(c)** and **(d)**. *Geear v. Boulder Cmty. Hosp.,* 844 F.2d 764, 766 (10th Cir.1988) (holding that hearing requirement for summary judgment motions is satisfied by court's review of documents submitted by parties).

***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine fact issue. ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999).

### III. ANALYSIS

Plaintiff was employed formerly by defendant for more than 20 years, most recently as a "head end" technician in Pueblo, Colorado. He was laid off in February,

2

2008. Both prior and subsequent to his separation, plaintiff applied for no less than 13 other jobs within the company.[3] He was not hired for any of those positions. He claims that defendant refused to hire him because of his age and national origin. Defendant moves for summary judgment on the bases (1) that plaintiff has waived the right to assert claims for age and national origin discrimination as to some of the positions by virtue of a Separation Agreement and General Release he signed in return for severance pay; and (2) that plaintiff has failed to demonstrate that the legitimate non-discriminatory reasons defendant has articulated in support of its hiring decisions are pretextual. I address these issues in turn.

## A. WAIVER

Plaintiff applied for two of the job positions at issue – Direct Sales Representative and Uplink Tech III – prior to the effective date of his separation.[4] Defendant claims that plaintiff has waived these claims by virtue of the Separation Agreement and General Release he executed as part of his severance package. In that contract, plaintiff agreed to

> . . . knowingly and voluntarily waive, release and forever discharge [defendant], its parents, affiliates, subsidiaries, successors, assigns, employees, officers, agents, directors, benefit plans and benefit plan fiduciaries (collectively, "Comcast Releasees"), of and from any and all action, causes of action, suits, claims, debts, demands and complaints whatsoever, in law or equity, that [plaintiff] . . . ever had, now ha[s], or may have against the Comcast

---

[3] Plaintiff now has narrowed his claims to only 7 of the 13 positions for which he applied, admitting that he was not qualified for some and that others were closed without anyone being hired. (*See* **Final Pretrial Order** ¶ 3 at 2 [#43], filed September 24, 2010; Plf. Resp. Br. at 17, 20.) Thus, summary judgment as to those claims is appropriate.

[4] He applied for a Direct Sales Representative position again in May, 2008.

3

> Releasees or any of them arising out of or relating to [his] employment with [defendant], the termination of that employment or any other matter, including but not limited to . . . any rights or claims under Title VII of the Civil Rights Act of 1964 (as amended), . . . The Age Discrimination in Employment Act of 1967 ("ADEA"), . . and any other federal, state or local law prohibiting discrimination . . . .

(Def. Motion App., Exh. A-16(1) ¶ 9(a) at 9.) Despite the breadth of this language, the release acknowledged specifically that it did not "release any rights or claims which may arise after the date on which [plaintiff] sign[ed] this Agreement[.]" (*Id.*) This language is in keeping with well-settled legal authority that prohibits prospective waiver of an employee's rights under Title VII. ***Alexander v. Gardner-Denver Co.***, 415 U.S. 36, 51-52, 94 S.Ct. 1011, 1021, 39 L.Ed.2d 147 (1974). ***See also Kendall v. Watkins***, 998 F.2d 848, 851 (10th Cir. 1993) ("[A]n employee may agree to waive Title VII rights that have accrued, but cannot waive rights that have not yet accrued."), ***cert. denied***, 114 S.Ct. 1075 (1994).

"In general, a cause of action accrues on the date the employee is notified of an adverse employment decision by the employer. An employee receives notice of an adverse employment decision when a particular event or decision is announced by the employer." ***Proctor v. United Parcel Service***, 502 F.3d 1200, 1206 (10th Cir. 2007) (citations and internal quotation marks omitted). Thus, a failure to hire claim does not accrue until the applicant is informed that his application has been rejected. ***See Davidson v. America Online, Inc.***, 337 F.3d 1179, 1187 (10th Cir. 2003). Although defendant characterizes plaintiff's pre-separation job applications as requests for

4

transfer[5] and suggests that those requests somehow were terminated automatically on the date of plaintiff's separation from employment, it presents no actual evidence to substantiate this argument.  Plaintiff avers that he did not receive actual notice that his applications had been rejected until after his date of separation.  Thus, claims related to those positions did not accrue prior to that date and could not have been waived by the release.

### B.  SUBSTANTIVE DISCRIMINATION CLAIMS

Plaintiff's substantive claims for allegedly discriminatory failure to hire based on age under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and national origin pursuant to Title VII, 42 U.S.C. § 2000e *et seq.*, are governed by the burden-shifting analysis of **McDonnell Douglas Corp. v. Green**, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[6]  Under that rubric, plaintiff bears the burden to first establish a *prima facie* case of discriminatory failure to hire by showing that:  (1) he belongs to a protected class; (2) he applied and was qualified for a job for which the employer was seeking applicants; (3) he was rejected for that job; and (4) following his rejection, the job remained open and defendant continued to seek applicants from persons with plaintiff's qualifications.  **Garrison v. Gambro, Inc.**, 428 F.3d 933, 937 (10th Cir. 2005); **Kendrick v. Penske Transportation Services, Inc.**, 220 F.3d 1220,

---

[5]  A proposition that seems dubious in any event given that, although the separation agreement did not become effective until February 8, 2008, plaintiff's last day of work was January 17, 2008, after which he was no longer considered on active status.  (Def. Motion App., Exh. A-16(1) ¶¶ 1(a) & 1(b) at 1.)

[6]  Although direct evidence of discriminatory intent would not require plaintiff to rely on this analytical framework, *see Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22 , 83 L.Ed.2d 523 (1985), he presents only circumstantial evidence in response to the motion for summary judgment.

5

1226 (10th Cir. 2000).[7]

Although defendant contends with respect to the positions at issue here that plaintiff was not qualified, its assertions are not properly considered in the context of plaintiff's *prima facie* case. A plaintiff is "qualified" for purposes of the *prima facie* case if he possesses the minimal qualifications necessary for the job. **See Corneveaux v. CUNA Mutual Insurance Group**, 76 F.3d 1498, 1502 (10th Cir. 1996); **Burrus v. United Telephone Co. of Kansas, Inc.**, 683 F.2d 339, 342 (10th Cir.), **cert. denied**, 103 S.Ct. 491 (1982).[8] I find that plaintiff has established a *prima facie* case with respect to the positions still at issue in this matter. **See Plotke v. White**, 405 F.3d 1092, 1101 (10th Cir. 2005) (describing plaintiff's burden with respect to the *prima facie* case as "minimal").

Thus, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its employment decision. **Texas Department of Community Affairs v. Burdine**, 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); **Jaramillo v. Colorado Judicial Department**, 427 F.3d 1303, 1307 (10th Cir. 2005). This is a burden of production, not of persuasion. **Burdine**, 101 S.Ct. at 1094-95. As discussed in more detail below, defendant's assertions with respect to each of the jobs in question that plaintiff was not the best qualified candidate or did not have the skills required, that other candidates were a "better fit," or that plaintiff's resume was incomprehensible and

---

[7] There is no requirement, however, to show that plaintiff was replaced by someone not within the protected class. **See O'Connor v. Consolidated Coin Caterers Corp.**, 517 U.S. 308, 311-312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) (ADEA); **Kendrick**, 220 F.3d at 1226-29 (citing **Perry v. Woodward**, 199 F.3d 1126, 1137-40 (10th Cir. 1999)) (Title VII).

[8] As noted above, however, plaintiff has conceded that he was not minimally qualified with respect to several of the other positions for which he applied.

6

made a poor impression satisfy this burden.

Therefore, the burden shifts back to plaintiff to prove the ultimate fact of age or national original discrimination by showing that defendant's proffered reason is pretextual. ***MacKenzie v. City and County of Denver***, 414 F.3d 1266, 1278 (10th Cir. 2005); ***Garrett v. Hewlett-Packard Co.***, 305 F.3d 1210, 1216 (10th Cir. 2002). Ultimately, under the ADEA, plaintiff must prove that "but for" his age, he would have been hired for one or more of the positions for which he applied. ***See Gross v. FBL Financial Services, Inc.***, – U.S. –, 129 S.Ct. 2343, 2351, 174 L.Ed.2d 119 (2009). ***See also Medlock v. United Parcel Service, Inc.***, 608 F.3d 1185, 1193 (10th Cir. 2010) (noting that "it is not the employer's burden to negate any possible contributory role played by age in the challenged adverse action"). With respect to plaintiff's claims of national origin discrimination, he must show that his national origin was a "motivating factor" in defendant's hiring decisions. 42 U.S.C. § 2000e-2(m); ***see also Gross***, 129 S.Ct. at 2349.[9] With these standards in mind, I turn to consider each of the positions at issue *seriatim*.

### 1. Communications Tech 1-3

Plaintiff applied for this position in June, 2008. The job involves performing routine pre-wires and disconnects for residential and business cable customers and is essentially an entry level position. Indeed, plaintiff held one or more of these positions early in his career with defendant. Defendant asserts that plaintiff was not hired for the

---

[9] In other words, although national origin need be only one of the factors that motivated the employment decision, the Supreme Court has specifically declined to permit age-related claims under the ADEA to rely on a "mixed motives" theory. ***See Gross***, 129 S.Ct. at 2349-51.

position because even though he was qualified for the job, other candidates were a "better fit," and also because plaintiff seemed dissatisfied with the pay scale for the position and the rules relating to use of company vehicles for commuting.

Plaintiff maintains that there is a genuine issue of material fact regarding pretext because defendant has given inconsistent explanations for its decision. Pretext may be inferred where there are such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Garrett*, 305 F.3d at 1217 (citation and internal quotation marks omitted; alteration in original). Nevertheless, while the assertion of additional and new or conflicting reasons for the hiring decision may create a genuine issue of material fact, pretext is not established where the employer simply has elaborated or offered more detailed explanations of its rationale. ***See Smith v. Oklahoma ex rel. Tulsa County District Attorney***, 245 Fed. Appx. 807, 817 (10th Cir. Aug. 23, 2007).

Such is the case here. The conclusion that other candidates were a "better fit" for the job suggests that a variety of considerations, not just the minimal qualifications set forth in the job description, were part of the hiring decision. Indeed, Simone Lykens of defendant's human resources department confirmed that job fit was a qualification of the position that spoke to the "overall candidate" and was based largely on the interview. (Def. Reply App., Exh. A-19 at 41-42.) Darren McClure, one of the supervisors who interviewed plaintiff, was underwhelmed by plaintiff's performance,

8

thinking that plaintiff had given "canned" answers and failed adequately to sell himself for the job. Because the other supervisor, Kevin Bland, was willing to hire plaintiff based on the interview, however, McClure suggested Bland contact plaintiff's previous supervisor, Bob DeBaggis, for a reference. DeBaggis told Bland he would not rehire plaintiff. Defendant has submitted performance reviews from 2006 and 2007 showing that plaintiff had received middling grades – somewhere in between "improvement needed" and "meets expectations" – in all categories. (*See* Def. Motion App., Exhs. A-15 ¶ 5 at 2 and A-15(1).)[10] These details substantiate defendant's conclusion that plaintiff was not a "good fit" for the job.[11]

Nor does plaintiff's mere assertion that he had no problem with the pay scale and

---

[10] Plaintiff's attempt to fashion pretext out of the argument that a positive reference was not a qualification for the job defies credulity. Even if a positive reference was not required, nothing in Title VII or the ADEA requires an employer to ignore a patently negative one. Similarly, the fact that DeBaggis never shared his negative assessment with plaintiff is a complete *non sequitur*. Plaintiff could not have been unaware of his own marginal performance evaluations, both of which he signed. (Def. Motion App., Exh. A-15(1) at 6 & A-15(2) at 6.) Nor is there any suggestion from the record that DeBaggis ever told plaintiff he would give him a positive reference or, indeed, what kind of a reference he might give at all if asked to provide one.

[11] In addition, Jim Arellano, who supervised plaintiff and wrote a letter of recommendation for him, testified that technical skill was a less important criteria in selecting for the Communications Tech 1-3 position than more intangible attributes:

> A:  . . . . As an operations manager, I stopped hiring for skill –
> Q: Okay.
> A:  – and started hiring for attitude and for personality, you know. Those
> persons in a customer – this person has to be able to go into a
> customer's home and interact with that person, and so, you know, that
> definitely weight heavily into it.
> Q: Um-hmm.
> A:  So we – you know, you don't necessarily – you don't necessarily hire
> based on skill any more. You can teach – you can train – you know, you
> can teach somebody how to do a job, but you can't teach somebody how
> to be courteous and pleasant and be able to have patience.

(Def. Reply App., Exh. A-21 at 45-46.) These observations translate closely to the lack of enthusiasm and salesmanship McClure felt plaintiff exhibited during his interview.

9

company vehicle policy create a fact issue regarding pretext. Lykens testified that she spoke to plaintiff prior to his interview and made him aware of the pay cut taking the job would entail. She acknowledged that neither of these issues appeared to be a deal-breaker for plaintiff and that they did not disqualify him from consideration in any event. (Def. Reply App., Exh. A-19 at 25-27.) Nevertheless, plaintiff offers nothing to suggest that defendant did not honestly, even if erroneously, believe that accepting what amounted to a demotion, with its concomitant reduction in pay and perquisites, would make plaintiff a less contented employee. (*See id.*, Exh. A-21 at 44). ***See also Stover v. Martinez***, 382 F.3d 1064, 1076 (10th Cir. 2004) ("[I]n evaluating pretext, the relevant inquiry is not whether [defendant's] proffered reasons were wise, fair or correct, but whether [defendant] honestly believed those reasons and acted in good faith upon those beliefs.") (citation and internal quotation marks omitted; second and third alterations in original); ***Simms v. Oklahoma ex rel. Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1330 (10th Cir.) ("Our role is to prevent unlawful hiring practices, not to act as a 'super personnel department' that second guesses employers' business judgments."), ***cert. denied***, 120 S.Ct. 53 (1999).

    The fact that these criteria were inherently subjective adds nothing to plaintiff's arguments. The use of subjective criteria in selecting applicants for a position is neither unusual nor inherently suspect, and the law of this circuit is to "infer pretext . . . only when the criteria on which the employers ultimately rely are *entirely* subjective in nature" ***Turner v. Public Service Co. of Colorado***, 563 F.3d 1136, 1145 (10th Cir. 2009) (quoting ***Jones v. Barnhart***, 349 F.3d 1260, 1267-68 (10th Cir. 2003)) (emphasis

added; internal quotation marks omitted). Those circumstances are not present here. Plaintiff has presented no evidence to suggest, for instance, that he was asked questions not posed to other applicants.[12] *See id.* at 1146-47. The fact that Bland and McClure disagreed about the impact of plaintiff's interview on his eligibility means little in the absence any suggestion that either McClure or plaintiff's former supervisor, DeBaggis, harbored discriminatory or other ill motive toward people of plaintiff's age or national origin generally or toward plaintiff himself specifically.[13] *See id.* at 1146.

Plaintiff also sees pretext in the alleged "procedural irregularity" of having McClure and a human resources representative involved in plaintiff's interview. *See Kendrick*, 220 F.3d at 1230. The evidence belies this allegation. McClure affirmed that it was routine to have two supervisors interview each candidate. Although McClure was a technical operations manager and did not generally participate in hiring interviews, he had done so on occasion in the past. Thus, although Bland did not recall why McClure was present at the interview (*see* Plf. Resp. App., Exh. 1 at 9-10), McClure specifically recalled that Bland asked him to assist with plaintiff's interview at the last minute because there was no other supervisor available at the time (*see* Def. Reply App., Exh. A-21 at 12-13). Moreover, the fact that Bland personally had never before been involved in an interview in which both a manager and a human resources representative also says little in the absence of any suggestion that Bland was the only supervisor who

---

[12] To the contrary, Bland testified that each interview followed a script, with allowances for candidates to elaborate on their answers if they wished. (Plf. Resp. App., Exh. 1 at 9.)

[13] Indeed, nothing in the record appears to contradict McClure's testimony that he knew nothing about plaintiff or his qualifications prior to the interview. (Def. Reply App., Exh. A-21 at 14-15.)

interviewed candidates, either for this position or in general, or that human resources had no reason to be involved in the interview at all, or that the presence of these two other people was unique to plaintiff's interview in any way.[14]  Nor is there evidence that McClure or the undisclosed human resources representative had any animosity toward people over age 40, or people of Hispanic origin, or plaintiff himself.  **See Turner**, 563 F.3d at 1145.

Finally, plaintiff's bald assertion that he was more qualified than the other candidates who were hired is no evidence at all.  **Rice**, 166 F.3d at 1092.  Plaintiff admitted that he knows little about the qualifications of the applicants who were hired for the position.  (Def. Motion App., Exh. A-1 at 143-144.)  The two comparators he proffers in response to the motion further his arguments not at all.  The first appears to not even have been considered as part of the same requisition for applications, as she was offered a job in November, 2007.  (Plf. Resp. App., Exh. 12 at 7.)  Although the second hire had been discharged from a previous job (*id.*, Exh. 12 at 4), here again there is absolutely no context for this purportedly pivotal circumstance.  The Tenth Circuit has counseled caution in scrutinizing the relative merits of individual employees.  **See Jaramillo**, 427 F.3d at 1308.  "To show pretext, the disparity in qualifications must be 'overwhelming.'"  *Id.*  This plaintiff has not done.  **See Simms**, 165 F.3d at 1330 ("When two candidates are equally qualified in that they both possess the objective qualifications for the position and neither is clearly better qualified, 'it is within the employer's discretion to choose among them so long as the decision is not based on

---

[14]  Likewise, the fact that McClure did not recall a human resources representative being present at the interview cannot be reasonably construed as evidence of anything.

unlawful criteria.'") (quoting **Colon-Sanchez v. Marsh**, 733 F.2d 78, 82 (10th Cir.), **cert. denied**, 105 S.Ct. 181 (1984)). Clearly, while plaintiff had the technical skills set forth in the job description, he lacked that certain *je ne sais quoi* that distinguished him from among the other qualified applicants. No reasonable finder of fact could find that this assessment was false, let alone that it was a pretext for age or national origin discrimination.

For these reasons, defendant's motion for summary judgment with respect to plaintiff's claims relating to the Communications Technician 1-3 position will be granted.

### 2. DAC Technical Support Engineer/DAC Support Field Engineer

Plaintiff applied for both these jobs in May, 2008.[15] Defendant contends that plaintiff was not offered these positions because the manager of field services, Matt Snell, determined that plaintiff did not have the type of experience or skills defendant was seeking, specifically, that he did not have sufficient experience working with the DAC or programming the equipment.

Although plaintiff disagrees with this assessment, his evidence in rebuttal does not actually contradict defendant's proffered explanation. Plaintiff testified that he had experience installing, upgrading, and linking to the DAC. (Plf Resp. App., Exh. 11 at 122.) Yet these were not the skills that were being sought for the positions (Def. Motion App., Exh. A-4 at 36-37, 47-48), and plaintiff's mere disagreement with defendant's

---

[15] The DAC is a piece of equipment that controls encryption of video. A DAC Support Field Engineer is responsible for integrating and validating new DAC upgrades, patches, devices, and equipment, as well as for providing field support for existing products. A DAC Technical Support Engineer provides technical support in a help desk environment for users of the DAC platform. (Def. Motion App., Exh. A-18 ¶¶ 4 & 5 at 2 & Exhs. A-18(1) & (2).)

13

assessment of his qualifications (**see** Plf. Resp. App., Exh. 11 at 125)[16] does not create a genuine issue of material fact for trial. **See Simms**, 165 F.3d at 1330 ("An employee's own opinions about his . . . qualification [do not] give rise to a material factual dispute.") (citation and internal quotation marks omitted).

To the extent plaintiff had some of the qualifications necessary for the positions, he has not shown that he was overwhelmingly more qualified than the other applicants who were ultimately hired. **Jaramillo**, 427 F.3d at 1308. Although plaintiff attempts to compare himself to Walter Fisher, a 46-year old head end technician who transferred into the DAC Field Support Engineer job, he proffers nothing more than his own bare *ipse dixit* to substantiate his conclusion that he and Fisher were similarly situated. Yet Fisher's transfer request shows previous experience as a DAC administrator. (Plf. Resp. App., Exh. 14 at 4.) As described by Snell, this meant Fisher "was responsible for the day-to-day operations of the DAC." (Def. Reply App., Exh. A-22 ¶ 3 at 2.) In addition, Fisher had completed DAC and advanced DAC training in his previous employment, training which plaintiff lacked. (*Id.*, Exh. A-22 ¶¶ 3 & 4 at 2.) In light of such profound differences in experience and training, the mere similarity between plaintiff's title and Fisher's proves nothing. (**See** Plf. Resp. App., Exh. 8 at 19-20 (testimony of Snell that two people bearing the title "head end technician . . . could have vastly, vastly different skill sets").)

In short, there is nothing in the evidence even remotely suggesting that defendant's stated reason for not hiring plaintiff for these positions was pretextual.

---

[16] Although plaintiff had done some programming when the equipment was first being assembled, he admitted that he lost his "write status" soon thereafter. (Plf. Resp. App., Exh. 11 at 122.)

Accordingly, summary judgment will be granted as to these claims as well.

### 3. Direct Sales Representative

Plaintiff submitted applications for a Direct Sales Representative position in February, 2008, and again in May, 2008. This position involves door-to-door residential sales of defendant's products and services. Defendant maintains that plaintiff was not considered for the position because his resume, riddled with spelling and grammatical errors, did not reflect well on his attention to detail in general and did not reflect relevant sales experience in particular.

Plaintiff maintains these reasons are pretextual because he had sold products to customers as part of his job as an installer. This argument is something of a red herring. Defendant's rationale for not considering plaintiff was not that he lacked sales experience, but rather that his resume failed to reflect that he had such experience. Contrary to plaintiff's implicit assumption, the evidence does not support a conclusion that a resume merely showing experience as an installer necessarily indicates sales experience. David Kaiser, defendant's Rule 30(b)(6) witness, testified that while technicians have the opportunity to sell upgrades to customers, not all take advantage of it:

> . . . to make that general broad comment [that experience as an installer implies sales experience] about every technician would be – because not every technician upgrades customers. They sell nothing. So I wouldn't say that that would be a strong suit of everybody who was a technician.

(Plf. Resp. App., Exh. 10 at 29.) Indeed, the resume of the installer to whom plaintiff purports to compare himself clearly set forth his significant sales experience in that position. (***See id.***, Exh. 10 at 27-28.) Plaintiff's resume focused on his technical

15

background and gave no indication that he had ever sold anything to anyone. (*See* Def. Motion App., Exh. A-1 at 7 (Depo. Exh. 3).)

Nor can there be any argument with defendant's conclusion that plaintiff's resume reflected poorly on his attention to detail. The resume has too many spelling, punctuation, and grammatical errors to count. Suffice it to say that plaintiff misspelled the very first word of the document – his own first name. (*See id.*) Although plaintiff argues that writing ability is not listed as a requirement for the position, one of the qualifications specified was "[a]bility to communicate." (Plf. Resp. App., Exh. 9 at 2.) Likewise, plaintiff's argument that he was "far more qualified" than the applicants who were hired is not substantiated by the record. *See Jaramillo*, 427 F.3d at 1308. Although plaintiff scoffs at the credentials of some of the applicants who were hired, all had relevant retail sales or other sales-related work experience. (*See* Plf. Resp. App., Exh. 10 at 18-19.) Nothing in the record, other than plaintiff's own incredulity, supports a conclusion that defendant was not well within the ample boundaries of its sound business judgment in concluding that these candidates were better qualified than plaintiff.

For these reasons, summary judgment is appropriate with respect to these claims as well.

### 4. Uplink Tech III/Encoder Operation Tech/Technical Support Engineer

Plaintiff applied for the Uplink Tech III position in February, 2008, and for the other two jobs in May, 2008. A human resources generalist, Erin Reed, screened applicants for all three positions. She did not consider plaintiff further for any of these

positions because she found it difficult to discern his qualifications from his resume and because she felt the poor quality of the resume showed a lack of true interest in the jobs. As she elaborated in her deposition testimony:

> A: . . . Based off of [plaintiff's] resume, being in talent acquisition for as long as I have been – as a recruiter, you see so many resumes a day, and there was very little indication of his technical aptitude on that resume. It was impossible to even try and interpret what that may have been.
> . . . .
>
> A: The resume, I think was indicative of the effort put forth for trying to apply for another position, and I think your resume is technically your first impression. And when I take a look at resumes, if I see more than two errors, I have a strong suspicion that they didn't pay the proper attention to want to apply for a position of the caliber in my building.
> . . . .
>
> A: Considering that one of the minimum requirements [for the Technical Support Engineer position] is good oral and written communication skills and the fact that those folks are the first point of contact for HITS addressability, it was a concern to me.
> . . . .
>
> A: . . . I wouldn't just say misspellings. I would refer to the entire document. It was indecipherable. You could barely understand exactly what the message [plaintiff] was trying to get across with that document.
>
> . . . . And like I said, I always consider this your first impression.
>
> And when applying for a position, and when you are competing against over 20 people for a position . . . then you have to put your best foot forward on this piece of paper.

(Def. Motion App., Exh. A-17 at 50-52, 60-61.)

Plaintiff claims that defendant's stated reasons are pretextual because other

applicants had similarly obtuse resumes and yet were hired for the Technical Support Engineer position. Of course, nothing in Title VII or the ADEA requires an employer to parse a largely unintelligible resume for some inkling of a candidate's qualifications. In any event, Reed explained that one these alleged comparators' resumes, while not clearly evidencing every single minimum qualification, was "clearly put together so I could understand a little bit about what her background was and some of her prior experience and her education[.]" (Plf. Resp. App., Exh. 15 at 107-108.)[17] In plaintiff's resume, by contrast, his qualifications practically are buried beneath an almost stream-of-consciousness narrative. Reed's assessment that this document was "indecipherable" is neither incredible nor demonstrably false.

Moreover, it is clear that even if plaintiff's technical qualifications for these positions could have been discerned from the resume he submitted, the resume itself made a distinctly unfavorable impression on Reed. There is neither evidence nor argument suggesting that any other candidate's resume was as error-ridden as plaintiff's. Defendant was entitled to conclude, in the sound exercise of its honest business judgment, that an applicant who apparently either did not know that his resume was largely incomprehensible or did not care enough to be more careful in presenting his credentials for consideration for a job was not someone who should go further in the interview process.

---

[17] The second had been working for defendant as a temporary employee and was recommended for the job by the hiring manager. (Def. Reply App., Exh. A-23 at 71.) As noted above, the only reference plaintiff received was a negative one.

## IV.  CONCLUSION

Plaintiff has failed to demonstrate any genuine issue of material fact suggesting that defendant's various proffered legitimate non-discriminatory reasons for its hiring decisions were a pretext for age or national origin discrimination.  Thus, defendant is entitled to summary judgment as to those claims.

## V. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendant's Motion for Summary Judgment** [#26] filed July 23, 2010, is **GRANTED**;

2. That plaintiff's claims against defendant are **DISMISSED WITH PREJUDICE**;

3. That judgment **SHALL ENTER** on behalf of defendant Comcast of Colorado IX, LLC, a Delaware limited liability company, against plaintiff, Joseph Gonzales, as to all claims for relief and causes of action;

4. That the Trial Preparation Conference, currently scheduled for October 29, 2010, at 9:00 a.m., as well as the trial, currently scheduled to commence on Monday, November 15, 2010, are **VACATED**; and

5. That defendant is **AWARDED** its costs, to be taxed by the Clerk of the Court pursuant to Fed.R.Civ.P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated October 18, 2010, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge